CITY OF EAST CLEVELAND ET AL., APPELLEES, v. BOARD OF
COMMISSIONERS OF CUYAHOGA COUNTY, APPELLANT.

[Cite as East Cleveland v. Bd. of Commrs. (1972),
31 Ohio App. 2d 213.)

(No. 71-314—Decided February 22, 1972.)

*Mr. Henry B. Fischer,* director of law, and *Mr. Stanley G. Webster,* for appellee city of East Cleveland.

*Mr. Richard R. Hollington, Jr.,* director of law, *Mr. James W. Head,* and *Mr. Jeffrey B. Marks,* for appellee city of Cleveland.

*Mr. Patrick A. Gareau,* for the city of Strongsville and the city of Westlake, appellees.

*Mr. John T Corrigan,* prosecuting attorney, *Mr. A. M. Braun, Messrs. Cruey, Kelb, Duffey & Hewes,* and *Mr. George R. Hewes,* for appellant.

Holmes, J. This matter involves an appeal by Cuyahoga County from a determination of the Board of Tax Appeals of the state of Ohio reallocating the so-called undivided local government fund of Cuyahoga County for the year 1971.

An appeal had been taken to the Board of Tax Appeals by the cities of Cleveland and East Cleveland from a determination of the Cuyahoga County budget commission dated September 4, 1970, wherein the budget commission, acting under the pertinent provisions of R. C. 5739.23, allocated the local government fund for the year 1971 in the amount of $17,648,431.59.

After a hearing *de novo,* the board of tax appeals reallocated the local government fund pursuant to their interpretation of the minimum floor requirements of R. C. 5739.23, and by such computation reduced the allocation that had previously been made by the budget commission to Cuyahoga County from $5,295,021.59, which was 30 percent of the total apportionment, to $4,830,005.11, which was 27.3679 percent of the total.

In the hearing before the board of tax appeals, as well as in the appeal herein, each political subdivision in Cuyahoga County receiving an allocation from the local government fund is either a party appellant or appellee.

Cuyahoga County appeals, citing the following five errors:

"(1) The board failed to consider and give effect to

its own entry of July 19, 1971, certifying an additional sales tax allocation of $4,042,107.78 which brought the Cuyahoga County local government fund to a total of $21,-690,539.37 when it made its *de novo* distribution of an estimated $17,648,431.59 to the subdivisions of this county on July 22, 1971;

"(2) The board failed to consider or apply the controlling provisions of former Section 5739.23 for the years 1968, 1969 and 1970 in determining 'the product of the averages of the percentages of the local government fund as apportioned to (these) subdivisions for the calendar years 1968, 1969 and 1970' in determining the minimum proportionate shares under the provisions of the new Section 5739.23 (I);

"(3) The board erred in its entry and incorporated worksheets of 7/22/71 in computing the 'floor or allocation pursuant to minimum per S. B. 539' as set forth in Column (4) of its order and in the amounts allocated to these subdivisions thereunder;

"(4) The board erred in applying average floor percentages (Column 5) to reduce the Budget Commission's allocation to Cuyahoga County from $5,295,021.59 to $4,830,-005.11 or from 30 percent to 27.3679 per cent of the original apportionment and in awarding $273,454.11 of this amount to the city of Cleveland and the balance to other subdivisions;

"(5) The board erred to the prejudice of this appellant in stating and applying conflicting interpretations of the provisions of Section 5739.23, as amended, in that it held that the 'floor' established by division (I) should reduce Cuyahoga County's 1971 apportionment while the board held in its decision and entry, No. 70-11-3845 dated May 6, 1971, that 'the floor established by S. B. 539 has no application to (the) county and is therefore disregarded.' "

In reference to the first assignment of error it may be noted that in the entry of determination of the board of tax appeals, dated July 22, 1971, is to be found the following:

"It is also noted that the total amount herein allocated

is $17,648,431.59 and is made up of $4,121,144.59 in sales tax money appropriated by the Legislature *for the first six months of 1971 only,* and $13,527,287.00 estimated by the Board of Tax Appeals as the full years Cuyahoga County receipts from the tax on deposits.''

The appellant sets forth the additional information in its brief relative to the total sum allocated:

''It is noted that when the Cuyahoga County Budget Commission made the original allocation of the 1971 fund, it did not have a certificate from the B. T. A. for the $4,-042,107.78 in sales tax returns under Section 5739.22 R. C. to the county fund for the period from July 1, to December 31, 1971. The Board of Tax Appeals duly issued its certificate on July 19, 1971, to the county for this amount, bringing the total estimated 1971 local government fund of the county up from the 17.6 million dollar figure to $21,690,539.37.''

The appellant then contends that the board traditionally used the updated financial factors and records when deciding local government fund appeals *de novo,* and should have used the actual total of the 1971 local government fund.

It appears that the amount of the actual total fund available for distribution was known to the board at or about July 1, 1971, and that such amount had been certified to all of the local subdivisions in Cuyahoga County on July 19, 1971.

Although it may be true that the board could have properly taken into account the additional sales tax funds for the last half of the year, as appropriated by the legislature when the board made its determination, it was not required to do so. Also, the fact that it did not do so does not affect the determination of whether the required method was used for the allocation of the local government fund.

The appeal before the board of tax appeals was one concerning a review of the amounts which had been distributed by the Cuyahoga County Budget Commission. Such distributed amounts involved only the total as known by

the budget commission to be available for distribution, which amounts did not include the sales tax moneys for the last half of 1971.

Although not within the record before us, we may assume the balance of the appropriated sales tax revenues have since been allocated by the county budget commission.

We conclude that the Board of Tax Appeals was not in error in this regard, and that the first assignment of error is not well taken.

In the remaining assignments of error, two through five, the appellant is arguing in effect that the Board of Tax Appeals erred in not including the "public assistance" credits for 1968, 1969 and 1970 in determining the minimum proportionate share of Cuyahoga County, pursuant to R. C. 5739.23.

The undivided local government fund, consisting of receipts of state sales tax and state situs intangibles taxes which are to be distributed to local governments, is distributed by county budget commissions according to the "need" of each subdivision.

In recent years there have been a number of significant changes in the opaque laws controlling the allocation of such local government funds. Each successive change with its intended clarification of procedures has further complicated the verbal maze.

Until 1969, apportionment of the undivided local government fund was to be made by the county budget commission of each county, "among the subdivisions in which need for additional revenues has been found, in proportion to the amount of the needs of each as so determined."

In 1969, Senate Bill 114 authorized two methods of apportioning the fund: one, pursuant to a formula as contained within R. C. 5739.23 and the other, by way of a county formula adopted and administered pursuant to procedures outlined in R. C. 5739.232.

The basic statute pursuant to which the allocations were made herein, and the one with which we are concerned in this discussion, is R. C. 5739.23. Such statute pro-

sently contains a formula to determine "need" which is based generally upon expenditures of the subdivision minus revenues. The statute specifies items to be, or not to be, included in expenditures and revenues for determining relative "needs" under the formula.

One portion of R. C. 5739.23, which has in principle been a part of the law for a number of years, is embodied within division (H) of such section, which is as follows:

"(H) The relative need of each subdivision shall be multiplied by the relative need factor to determine the proportionate share of the subdivision in the undivided local government fund of the county, provided that the maximum proportionate share of a county shall not exceed the following maximum percentages of the total estimate of the undivided local government fund governed by the relationship of the percentage of the population of the county that resides within municipal corporations within the county to the total population of the county as reported in the reports on population in Ohio by the department of development as of the twentieth day of July of the year in which the tax budget is filed with the budget commission:

| "PERCENTAGE OF MUNICIPAL POPULATION WITHIN THE COUNTY: | PERCENTAGE SHARE OF THE COUNTY SHALL NOT EXCEED: |
|---|---|
| "Less than Forty-one per cent | Sixty per cent |
| "Forty-one per cent or more but less than Eighty-one per cent | Fifty per cent |
| "Eighty-one per cent or more | Thirty per cent" |

Effective in 1966, the Legislature removed the basic responsibility for public assistance and placed such burden on the counties.

In recognition of the additional financial burdens upon the counties occasioned by the public assistance expenditures, the following provision was placed in R. C. 5739.23:

"* * * and further provided that if the county appropriation required for any year is greater than the county government's share of expenditures in 1964 pursuant to Chapters 5106., 5107., 5113., and 5151. of the Revised Code not counting any amounts expended from utility exercise tax funds received by the county government under section 5727.46 or 5727.82 of the Revised Code, the commission shall if requested by the county commissioners apportion to the county in addition to the percent allowed by this section an amount equal to the difference between the required county appropriation for 1966 and the county government's share of expenditures in 1964 but not in excess of the average annual contribution by cities within the county for poor relief pursuant to Chapter 5113. of the Revised Code during the period 1962 to 1964, inclusive, other than the city share of utility taxes distributed under sections 5727.46 and 5727.82 of the Revised Code, and amounts contributed by the city under a plan for liquidating deficits for years prior to 1962, and reduce the apportionment to such city or cities by a like amount."

Such provisions were in force from July 1, 1966, until August 19, 1969, when the section was reenacted with the same provisions, and continued in force until November 17, 1969, when the provisions providing for the distributions to the county relating to welfare expenditures were removed to a new section—R. C. 5113.02, within Chapter 5113, pertaining to welfare.

Effective May 28, 1970, the Legislature again amended R. C. 5739.23 which, among other changes, added a new division (I) which provided a guaranteed minimum share to each subdivision based on the "percentages of the undivided local government fund as apportioned to that subdivision for the calendar years 1968, 1969 and 1970, inclusive, multiplied by the total amount" of the 1970 local government fund.

220

Division (I) of R. C. 5739.23 is as follows:

"The proportionate share of each subdivision in the undivided local government fund determined pursuant to division (H) of this section for any calendar year shall not be less than the product of the average of the percentages of the undivided local government fund of the county as apportioned to that subdivision for the calendar years 1968, 1969, and 1970, inclusive, multiplied by the total amount of the undivided local government fund of the county apportioned pursuant to section 5739.23 of the Revised Code for the calendar year 1970. For the purposes of this division, the total apportioned amount for the calendar year 1970 shall be the amount actually allocated to the county in 1970 from the state collected intangible tax as levied by section 5707.03 of the Revised Code and distributed pursuant to section 5725.24 of the Revised Code, plus the amount to be received by the county in the calendar year 1970 pursuant to division (B) (1) of section 5739.21 of the Revised Code, and distributed pursuant to section 5739.22 of the Revised Code. If the total amount of the undivided local government fund for any calendar year is less than the amount of the undivided local government fund apportioned pursuant to section 5739.23 of the Revised Code for the calendar year 1970, the minimum amount guaranteed to each subdivision for that calendar year pursuant to this division shall be reduced on a pro rata basis proportionate to the amount by which the amount of the undivided local government fund for that calendar year is less than the amount of the undivided local government fund apportioned for the calendar year 1970."

Inevitably a controversy developed over the interpretation of R. C. 5739.23 (I), as it related to R. C. 5739.23 (H). However, such controversy has appropriately been resolved by the recent decision in *Lucas County Commrs.* v. *Toledo* (1971), 28 Ohio St. 2d 214, in which the court, in a *per curiam* opinion, stated, at page 216:

"In essence, division (I) provides a floor and division (H) a ceiling for possible subdivision receipts from the distribution of the undivided local government fund. From the wording of the two sections, however, there is no doubt

that a situation could arise wherein it appears that a county would be entitled to more under (I) than (H) allows. Such a situation is presented by this case. If (H) is to remain intact, the amounts allocated under the formula in (I) could not exceed the percentages provided by the formula expressed in (H)."

Therefore, the Supreme Court has concluded that in determining a county's share of the local government fund, the budget commission, and thence the board of tax appeals, must consider the limitations of division (H) and accordingly limit the distribution of any amounts to counties as computed pursuant to division (I).

It should be noted that division (H) provides a ceiling, not a floor. The distributions of the local government fund to a county may not be more than 30 percent, but where the total amount available for allocation falls short of the floor requirements of (I), the distribution to a county may be less.

Parenthetically, we also call attention to the fact that there is no such ceiling or limitation as regards other subdivisions within the county.

Therefore, division (H), by its terms, establishes a ceiling or limitation on the funds to be allocated to Cuyahoga County to a percentage share of 30 percent in that such county is a county in which 81 percent or more of the people live within municipalities; however, as stated, such division does not prevent a lesser sum being allocated to it in a given instance.

The facts in the instant case present such a given instance in that the local government fund, as certified by the state of Ohio for distribution in Cuyahoga County in 1971, was less than the total local government fund in such county for 1970.

Under such circumstances, pursuant to division (I), it was necessary for the board to reduce the minimum amount for each subdivision on a pro-rata basis proportionate to the amount by which the amount of the fund for 1971 was less than the amount of the local government fund appropriated for 1970.

The record of the proceedings before the Board of

Tax Appeals indicates that such board allocated the local government fund on the basis of the minimum floor requirements of R. C. 5739.23 (I) and in doing so furtherly applied the pro-rata reduction provision due to the fact that the sum available for distribution was less than that distributed in 1970.

One of the appellant's basic contentions in this appeal is that the Board of Tax Appeals refuses to recognize and apply the formula provided in R. C. 5739.23 as such formula would relate to the funds provided by the counties for public assistance.

The appellant argues that R. C. 5739.23 (I) provides that the apportionments to the cities and the counties must be based upon a formula which includes the actual amounts as distributed to the subdivisions in the three years of 1968, 1969 and 1970. Further, appellant urges that such actual amount shall *include*, in the instance of the counties, such amounts as were calculated for public assistance and, in the instance of cities, shall *exclude* such amounts as were found to be their share of public assistance.

With this argument we cannot agree. In the first instance, the language relating to the apportionment to the counties of funds from the undivided local government fund for a portion of the county costs of financing the public assistance programs, as placed in R. C. 5739.23 in 1966, was contained in Substitute House Bill 376, which measure abolished city relief authorities and transferred all public assistance programs to the county governments.

The provisions in such measure providing for the apportionment of the undivided local government funds out of such sums which would be due the cities as were theretofore contributing to poor relief were in the nature of a reimbursement to counties. To the extent that such counties were reimbursed, through the application of such provisions, the amounts due the cities were reduced by a like amount.

Referring again to the provisions of R. C. 5739.23 as they existed from July 1, 1966, to November 17, 1969, we quote the following pertinent portion:

"* * * the commission shall if requested by the county

commissioners apportion to the county in addition to the per cent allowed by this section [need factor with the 30 percent limitation] an amount equal to the difference [and then follows the formula for determining what adjustments shall be made on account of public assistance for the county and the cities] * * *."

County exhibit No. 1, as filed within the hearing before the Board of Tax Appeals, will show that the budget commission for Cuyahoga County did, for the years of 1968, 1969 and 1970, in fact calculate that amount for public assistance which should be apportioned as between Cuyahoga County and the municipalities within the county.

Such amounts are shown to be based upon the determinations made therefor by the welfare department for the state of Ohio.

County exhibit No. 1 also shows that the municipal share of the public assistance for 1971 was in the sum of $1,836,581 and that such sum was apportioned among such municipalities. Further, that the county commissioners of Cuyahoga County made a request to the budget commission for an allocation of such sum to the county as a supplement to the local government fund distribution.

The exhibit further shows that such request was approved by the budget commission, and that appropriate pro-rata deductions would be made from the local government fund payments to the municipalities.

Such procedure as carried out by the budget commission, and as followed by the Board of Tax Appeals, was certainly proper as being within the intent and purpose of the prior provisions of R. C. 5739.23, and as now contained in R. C. 5113.02.

As stated previously, the purpose of such provisions was, and is, to reimburse the counties for their obligations concerned with public assistance, which the legislature placed upon the counties.

However, it was not the intent of such provisions to change the basic percentage formula as provided for each of the subdivisions.

The prior language of R. C. 5739.23 does not in any

way release or alter the percentage limitations as contained therein, nor does such language require that the calculated amount due the subdivisions be based upon the input figure for public assistance as arrived at for the years 1968, 1969 and 1970.

Such amounts, as calculated for public assistance, to be apportioned to the county and charged proportionately to the municipalities stand on their own, and such amounts are accordingly to be adjusted to the local government funds available for distribution only after the allocations of such fund have been determined.

To accept the appellant's theory that the amounts as calculated for public assistance should be added to the county and deducted from the cities prior to applying the allocation formula for the local government fund, would, in effect, be accepting a practice constituting a double reimbursement to the county. It is our determination that such was not the intent of the Legislature.

After a review of the record and of all of the testimony and exhibits before the Board of Tax Appeals, we hold that the decision of such board was both reasonable and lawful, and such decision is, hereby, affirmed.

*Judgment affirmed.*

TROOP, P. J., and STRAUSBAUGH, J., concur.